IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                              Case Nos.:      5:11cr43/RS/EMT
                                                 5:13cv169/RS/EMT
RAMONE ANTHONY SPRUILL

---

### REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 131). The Government filed a response (doc. 135), and Defendant filed a reply (doc. 141) and a separate supporting affidavit from his mother, Belinda Balthazar (doc. 145). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). The court held an evidentiary hearing in this case on February 21, 2014. After a careful review of the record and the evidence and arguments presented, it is the opinion of the undersigned that Defendant's motion should be denied.

### PROCEDURAL BACKGROUND

Defendant was charged in a two-count indictment with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(B) (Count One) and possession of a firearm in furtherance of a drug trafficking crime (Count Two) (doc. 46). Represented by appointed counsel Jonathan Wesley Dingus, Defendant entered a plea of guilty pursuant to a written plea agreement and statement of facts (docs. 78–80). The plea agreement did not specify the quantity of drugs for which Defendant would be held accountable, but it did provide that Defendant faced five (5) to forty (40)-years imprisonment on Count One, or, if the court found that he was responsible for more than five (5) kilograms of cocaine, that he faced from ten (10) to forty (40)-years imprisonment (doc. 78 at 2).

Thus, the language of the plea agreement made clear that the amount of drugs attributed to Defendant would affect the mandatory minimum sentence. The plea agreement further indicated that Defendant faced five-years imprisonment on Count Two, to run consecutive to the term of imprisonment imposed on Count One.

The draft Presentence Investigation Report ("PSR") was disclosed to the defense on March 23, 2012 (doc. 89). In the final PSR (doc. 97), Defendant was held accountable for seven (7) kilograms of cocaine, which corresponded to a Base Offense Level of 32 (doc. 97, PSR ¶55). After a downward adjustment for acceptance of responsibility, his Total Offense Level was 29 (PSR ¶¶ 61, 62). Defendant had a criminal history category of II (PSR ¶ 68). The applicable guidelines range would have been 97 to 121-months imprisonment. However, because the minimum term of imprisonment on Count One was ten years (pursuant to 21 U.S.C. § 841(b)(1)(A) and the terms of the Plea Agreement), the guidelines range became 120 to 121 months (PSR ¶¶ 107–108). There was also a minimum mandatory consecutive five-year term of imprisonment on Count Two (*id.*).

The defense offered no objections at sentencing (doc. 134 at 3). When given the opportunity to allocute, Defendant stated only that he had been cooperating with the Government "to the fullest" ever since his arrest (*id.* at 4). On April 18, 2012, the court sentenced Defendant to a term of 120-months imprisonment on Count One and 60-months imprisonment on Count Two, to run consecutively (doc. 106). He did not appeal.

Defendant's original § 2255 motion, which was not dated, was received and docketed by the clerk on April 29, 2013 (doc. 128). Defendant was directed to file an amended motion due to his failure to properly complete the court form, and he complied by filing an amended motion and supporting memorandum (doc. 131).

In his amended motion, Defendant claims that counsel was constitutionally ineffective. His primary complaint is that counsel failed to file an appeal as instructed (doc. 131).[1] In opposing the motion, the Government submitted an affidavit from Mr. Dingus indicating that the two men had agreed that there would be no appeal (doc. 135 at 13). In Defendant's reply, he reasserts his position that he,

---

[1] In his memorandum, Defendant also contends that counsel "failed to maintain adequate representation from the very beginning as well as a proper working relationship" (doc. 131-1 at 2). Defendant offers no factual support whatsoever to suggest the basis for this claim, and as such the court will not consider it.

Case Nos.: 5:11cr43/RS/EMT; 5:13cv169/RS/EMT

and later his mother, requested that counsel file an appeal (docs. 141, 145). As a result of the conflicting evidence in the record, the court conducted an evidentiary hearing.

## LEGAL ANALYSIS

### General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).

An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland, 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). Strickland's two part test also applies to guilty pleas. Hill v. Lockhart, 474 U.S. 52, 58 (1985). A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id.* at 59. In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must

indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States,

456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

### Failure to File an Appeal

The issue of counsel's duty and obligation with respect to his client's right to appeal has been well litigated.  The Supreme Court has unequivocally stated that if a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing Rodriguez v. United States, 395 U.S. 327 (1969); Peguero v. United States, 526 U.S. 23, 28 (1999)).  Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal.  *Id*. at 483; Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005); Cunningham v. United States, 378 F. App'x 955, 957 (11th Cir. 2010).

However, in cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, counsel's performance can still be constitutionally deficient if counsel failed in his or her duty to consult with the defendant regarding an appeal. Flores-Ortega, 528 U.S. at 478.

Consultation involves "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. If counsel has consulted with the defendant, of course, the question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *Id*. In this case, consultation is not at issue. Rather, Defendant asserts that he expressly instructed counsel to file an appeal and counsel failed to follow this instruction.

### The Written Record

In the affidavit submitted in conjunction with his reply (doc. 141-1), Defendant asserts that he told counsel immediately following sentencing that he wanted to file an appeal. Because he felt that counsel "did not seem to be very interested in doing this," Defendant called his mother and asked her to call counsel to ensure that counsel understood Defendant's desire to appeal (*id*. at 1–2). Defendant's mother, Belinda Balthazar, told Defendant that she had spoken with counsel and that counsel told her he would file a notice of appeal (*see* doc. 145 at 1; doc. 141-1 at 1–2).[2] Despite these communications, Defendant states that on April 30, 2012, Mr. Dingus informed Defendant that he had not filed a notice of appeal because an appeal would negatively impact Defendant's chances of receiving Rule 35 consideration[3] (doc. 141-1 at 2; doc. 131-1 at 3).[4] Counsel advised Defendant at that time that he was in constant contact with the Assistant United States Attorney ("AUSA") assigned to Defendant's case, and that "everything was on course" for the Rule 35 motion (doc. 141-1 at 2). Defendant states that at that point he felt he had no choice but to continue with this course of

---

[2] Ms. Balthazar's affidavit, referenced in Defendant's reply, was submitted as a separate document (doc. 145).

[3] Rule 35 provides that upon the "government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person" and, that upon the "government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved" information not known to defendant until a year or more following sentencing or if the usefulness of the information was not apparent earlier. *See* Fed. R. Crim. P. 35(b)(1), (2).

[4] Defendant claims that counsel attempted to "justify" his failure to file an appeal by sending Defendant a letter in which counsel noted that he did not think Defendant "should have filed a notice of appeal because of [his] ongoing extensive cooperation with the government," and that since the Government had assured counsel that it would be filing a Rule 35(b) motion that Defendant should not be on "both sides of the fence" or put himself in a position that would make the Government reluctant to credit Defendant for his cooperation (doc. 131 at 3).

Case Nos.: 5:11cr43/RS/EMT; 5:13cv169/RS/EMT

action as he no longer had an opportunity to file an appeal (*id.*). In March of 2013, Defendant learned that the Government would not be filing a Rule 35 motion, and Defendant states that since that time he has had no further communication with counsel regarding the appeal or counsel's alleged failure to file such as he requested (*id.*). Appended to Defendant's original motion are copies of correspondence with counsel from March and April of 2013, in which Defendant repeatedly expresses his concern about receiving credit for the assistance he provided to the Government (doc. 131-1 at 7–8, 10–11). The matter of an appeal is not mentioned.

In response, Mr. Dingus submitted an affidavit in which he states that, after discussing with Defendant the likelihood of ultimately receiving a Rule 35 reduction versus the "relative strength of his appeal," Defendant told him that he did not want to appeal (doc. 135 at 13). Counsel further avers that he did not hear that Defendant wanted to appeal until over a year after his sentencing and that Defendant did not advise him that he wished to appeal during the time frame within which to do so (*id.*).

<u>The Evidentiary Hearing</u>

<u>Request for Continuance</u>

At the commencement of the evidentiary hearing attorney Jean Downing, who had been appointed to represent Defendant for purposes of the hearing, advised the court that her client told her that he did not feel that she had met with him (or his witnesses) long enough prior to the hearing, and thus she was not fully prepared for the hearing. Ms. Downing admitted that she had only talked to Defendant for about an hour over the phone prior to the day of the hearing (and apparently had only spoken with Defendant's witnesses over the phone as well, but not long enough—according to Defendant—to properly prepare them for testifying at the hearing). Ms. Downing explained that she had been busy "in a federal trial" and/or a felony trial and had not had time to personally meet with Defendant (or, evidently, his witnesses).[5] The court asked Defendant to address the issue, and

---

[5] The court notes that counsel entered her notice of appearance on December 20, 2013 (doc. 148), <u>two months prior to the evidentiary hearing</u>. Counsel clearly was not in trial during that entire two-month period, such that she had no opportunity to personally meet with Defendant prior to the evidentiary hearing. Moreover, the undersigned previously continued the hearing at Ms. Downing's request based on similar claims (e.g., that she was in trial on a "Federal Felony case" and could not meet with Defendant) (*see* doc. 150, motion to continue; docket entry 151, order granting same). The undersigned was thus surprised when counsel again moved to continue the hearing at the outset of the hearing, without any prior notice to the court (the undersigned and her staff are assigned to the Pensacola

Case Nos.: 5:11cr43/RS/EMT; 5:13cv169/RS/EMT

Defendant reiterated that he felt that he had not had enough time to consult with his lawyer. The court, after observing numerous individuals in the courtroom seated behind Ms. Downing and Defendant, asked Ms. Downing if all of the witnesses Defendant wished to call were present. Defendant and Ms. Downing confirmed that all of Defendant's witnesses were present. The court then explained to Defendant the very limited nature and purpose of the evidentiary hearing—that is, that the court needed only to make a factual determination concerning whether Defendant advised his lawyer to file an appeal. The court then denied the (second) motion to continue the evidentiary hearing. Defendant was advised, however, that the court would allow him additional leeway in consulting with his counsel during the proceedings in the event there were additional questions he wished her to ask of the witnesses. During the hearing, the court indeed afforded the defense significant latitude in presenting testimony regarding, for example, Defendant's attempts at cooperation and his concerns about Mr. Dingus' overall representation. Although the testimony and questioning in these and other broad areas did not appear to be directly relevant to the limited issue for which the hearing was scheduled, the court allowed the questioning in an abundance of caution due to Defendant's allegation that Ms. Downing was not prepared for the evidentiary hearing. Additionally, at the conclusion of the hearing, Defendant agreed that all questions that he wanted to ask had been asked. In light of the foregoing, as well as the findings made herein, the court specifically finds that there was no prejudice to Defendant from the denial of his (second) motion for a continuance, as all relevant evidence and arguments were presented.

### Presentation of Testimony

Defendant testified first in his own behalf. He stated that he began talking to Government agents as soon as he was arrested about everything he and co-defendant Berrones had done. He testified that he believed he had provided substantial assistance and was disappointed when he did not receive a 5K1.1 motion at or prior to sentencing.[6] Relevant to the issue at hand, Defendant

---

division of this court, but the evidentiary hearing took place in Panama City, as that is where the underlying criminal case was prosecuted).

[6] Section 5K1.1 of the sentencing guidelines provides that, upon motion of the government filed prior to sentencing, the court may depart downward from the guidelines if a defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. U.S.S.G. § 5K1.1.

Case Nos.: 5:11cr43/RS/EMT; 5:13cv169/RS/EMT

testified that he told Mr. Dingus immediately after sentencing that he wanted to file an appeal. Defendant claimed counsel had told him that he would receive a (total) ten-year sentence, and he wanted to appeal the drug weight attributed to him, because he had expected to be sentenced based on two kilograms rather than five kilograms of cocaine. He stated that while he and his attorney were still in the courtroom following sentencing, he shook hands with counsel and told him that he wanted to file an appeal. According to Defendant, Mr. Dingus stated that he understood. Defendant also indicated that he called his mother after the proceeding and asked that she follow up with counsel about his appeal. Defendant stated that he did not recall the judge saying that the clerk, upon Defendant's request, could file a notice of appeal for him.

The rest of Defendant's testimony was not as clear. Defendant testified that he called counsel a couple of weeks after sentencing, and counsel told Defendant that he should not file a notice of appeal because that would put him on "both sides of the fence" and interfere with his continued attempts at cooperation. At that point, Defendant stated, the time for filing an appeal had expired.[7] Defendant testified that counsel told him not to worry because he was "pretty sure" that a Rule 35 motion would be filed. Defendant then testified that he contacted counsel a week after that, at which time he found out that no appeal had been filed. It appears from Defendant's testimony that he filed the § 2255 motion only after it became clear that no Rule 35 motion was forthcoming. He indicated that he spoke to counsel in October of 2012 and January of 2013, and counsel again reassured him that he would get a sentence reduction. Despite his interest in the Rule 35 motion, Defendant indicated that he was not in court to get Rule 35 consideration, but rather to get his direct appeal rights.

Defendant testified that he did not agree with counsel's affidavit in which counsel attested that the two men discussed the relative strength of his appeal versus the likelihood of receiving a reduced sentence pursuant to Rule 35 (doc. 135 at 13). He also disagreed with Mr. Dingus' statement that he did not hear that Defendant wanted to appeal until over a year after his sentencing, noting that if that were the case, counsel would have had no reason to approach the Government to ask whether filing an appeal could impact Defendant's chances of receiving a Rule 35 motion.

---

[7] Judgment was entered in Defendant's case on April 30, 2012 (*see* doc. 106), so the time for filing an appeal expired on May 14, 2012.

Case Nos.: 5:11cr43/RS/EMT; 5:13cv169/RS/EMT

Defendant asserted that counsel told Defendant that he would file an appeal, and Defendant should write him a letter if he wished to withdraw the appeal.

On cross-examination, Defendant acknowledged that he was not happy that he did not receive a 5K1.1 motion, even though he knew that the decision to file a 5K1.1 or a Rule 35 motion was at the Government's discretion. Nonetheless, Defendant claimed that counsel basically guaranteed that he would receive the benefits of a substantial assistance motion.

Defendant testified did not recall speaking with counsel two days after sentencing, on April 20, 2012, about his appeal, or speaking with him again on April 26, 2012.[8]  Similarly, Defendant did not recall deciding to forgo an appeal. He claims that the conversations he had with counsel about appealable issues took place immediately after sentencing and two weeks later. Defendant did not remember any communications occurring between those two conversations.

Defendant was asked on cross-examination to explain when he requested that counsel appeal. Defendant responded that, in addition to immediately following sentencing, he made one other specific request that counsel file an appeal. He said that approximately two weeks after sentencing, at some point in May 2012, he called counsel from the Washington County Jail. Defendant could not recall the exact date, but he knew it was in May because he had not yet been transferred from the Washington County Jail. He claimed that during this conversation Mr. Dingus told Defendant to contact him if Defendant did <u>not</u> want to file an appeal.

Defendant's mother, Belinda Balthazar, also testified at the hearing. Ms. Balthazar's recollection of events appeared to be slightly confused. She testified that she first asked counsel about an appeal at some point before Defendant was sentenced, and counsel told her that no appeal could be filed until after Defendant was sentenced. She testified she talked to counsel at the federal courthouse after sentencing and asked him about Defendant's appeal. Counsel responded that he would have to talk to Defendant himself about it because Defendant was his client, and Defendant was the one who had to make a decision with regard to an appeal. Ms. Balthazar then apparently corrected herself and testified that she spoke to counsel on the phone on the day of Defendant's sentencing. She stated that this conversation took place after she had talked to Defendant on the phone about his desire

---

[8] As will be seen *infra*, these are the two dates on which Mr. Dingus indicates he discussed with Defendant the issue of filing an appeal.

to appeal. Ms. Balthazar also testified that at the time she spoke to counsel on the phone, Angela Holland, her ex-sister in law, was with her. She said that <u>Defendant</u> later called her to find out what counsel had said about the appeal, but that she had no other conversations with <u>Mr. Dingus</u>.

On cross-examination Ms. Balthazar reiterated that she talked to counsel about an appeal on two occasions. One time, she talked with counsel before Defendant was sentenced, so she speculated that this must have been at Defendant's re-arraignment, as that was the only other proceeding she attended. The other time was a phone conversation the same day Defendant was sentenced, and she said that this was the last time she spoke to Mr. Dingus.

On re-direct examination, Ms. Balthazar testified that although at some point Defendant stated he did not want to appeal because his lawyer said it would not be a good idea, after sentencing Defendant had not wavered from wanting to appeal the 180-month sentence.

The next witness for the defense was Angela Holland, Ms. Balthazar's former sister-in-law. Ms. Holland testified that she attended Defendant's court proceedings with Ms. Balthazar, including Defendant's plea and sentencing hearings. She also said that she was with Ms. Balthazar when Ms. Balthazar talked to Defendant and to Defendant's attorney. Ms. Holland testified that she heard Ms. Balthazar ask counsel to file an appeal in Defendant's behalf. She also stated, contrary to Ms. Balthazar's testimony, that Ms. Balthazar called counsel several times after sentencing as well, and that she had heard Ms. Balthazar on the phone telling someone (presumably Mr. Dingus or someone with his office) at least three times that Defendant wanted to file an appeal.

The final defense witness was Defendant's father, Garnett Spruill. He testified that he had not been present at sentencing and had not talked to his son about the case. Mr. Spruill testified that the last Friday in September of 2012 (months after the deadline for filing an appeal had passed) that he talked to Defendant about Defendant wanting to file an appeal. Following that conversation, Defendant's father went to Mr. Dingus' office and left two phone numbers for counsel to call him regarding the appeal. His understanding was that counsel had not filed the appeal.

On recall, Defendant testified that he knew in September of 2012 that no appeal had been filed because he wrote to the appellate court (which contradicted his earlier testimony that he learned that no appeal had been filed just a few weeks after sentencing). He admitted did not file the § 2255 motion until later because he thought that the Rule 35 motion would still be filed.

Case Nos.: 5:11cr43/RS/EMT; 5:13cv169/RS/EMT

The Government called Defendant's former attorney, Jonathan Wesley Dingus. Counsel testified that he recalled that Defendant's mother asked him about an appeal the day Defendant was sentenced, and counsel said that he would have to talk to Defendant. Mr. Dingus was concerned because Defendant was continuing to cooperate, despite the fact that the DEA was not convinced he had provided complete information, and Mr. Dingus was worried that if Defendant filed an appeal it would lessen even further his ability to obtain a substantial assistance motion.

Counsel testified that he was unable to talk to his client immeditately after sentencing because Defendant was hustled out of court that day. They later had two conversations about the issue of an appeal. After the first one, which was a phone conversation, Defendant said he wanted to appeal. Counsel told Defendant to think about it and that he (counsel) needed to talk to the prosecutor to see how or whether an appeal would affect the chances that a Rule 35 motion would ultimately be filed. Counsel approached the AUSA about the issue and was told that it was unlikely that Defendant would be used for cooperation (or receive a Rule 35 motion) if he appealed.

As an aside, Mr. Dingus stated that there really was no legal issue to raise on appeal. He noted that the reason for the seemingly disparate sentences between Defendant and his (co-defendant) brother was that Defendant had admitted to more criminal involvement—Defendant was obtaining drugs direct from the source of supply, whereas the brother was a lower-level dealer. Counsel testified that in this case, an appeal would have resulted in an Anders brief. He also stated unequivocally, however, that "if someone wants to appeal, you take that as the gospel."

Mr. Dingus testified that met with Defendant on April 26, 2012, at which time he advised Defendant that if he appealed he would lose any opportunity to get a reduced sentence as a result of his cooperation. Defendant understood that, and was still hoping to get reduction, although counsel testified that he never guaranteed a sentence reduction. According to counsel, agents did not believe Defendant was being totally forthcoming about the involvement of his brother and his mother, but the DEA was still willing to try to work with Defendant because they were convinced that he had information about some key individuals. In counsel's opinion, based on what Defendant likely knew, if Defendant was honest and forthcoming he could have received a Rule 35 motion. On the other hand, based on what the Government told Mr. Dingus, if Defendant filed an appeal the Government would not file a Rule 35 motion. Counsel explained to his client that he would not benefit from his attempts

at cooperation if he pursued an appeal, and he noted the Government's willingness to continue to try to work with Defendant despite its concerns about the completeness of the information provided by Defendant. Counsel testified that on April 26, 2012, Defendant advised him not to appeal in hopes of getting a Rule 35, which could potentially provide a substantial sentence reduction, because there likely was no benefit in pursuing an appeal. Counsel stated that he documented the conversation in the file in accordance with the advice of Federal Public Defender Randy Murrell (doc. 149, exh. A).[9]

On cross-examination, Mr. Dingus stated that he did not send a letter to Defendant (to confirm Defendant's decision regarding an appeal) because at that point he did not know where Defendant would be transported. Counsel noted only that he talked to Defendant. He admitted that he had not made a note to the file on both days he spoke with Defendant after sentencing, only on the later date. Counsel reiterated that based on the information he provided to Defendant and what he understood from Defendant, Defendant had stated to him that he did not want to file an appeal.

On re-direct examination, Mr. Dingus stated that despite the fact that Defendant was not eligible for Rule 35 consideration due to credibility issues, Defendant still persisted in asking counsel to send the DEA agents out to talk with him. Counsel reiterated that he had been advised that the DEA was somewhat reluctant to rely on Defendant's cooperation in any event, but if he filed an appeal they would not use Defendant as a cooperating witness. Despite the detriment to Defendant, counsel stated without hesitation that if Defendant had insisted that counsel file a notice of appeal "of course" he

---

[9] The note to Mr. Dingus' file is somewhat different than counsel's testimony, as the note appears to document a discussion between the two men about the viability of appealing the Government's failure to file a 5K1.1 motion prior to or at sentencing, and does not address the tremendous risk of filing an appeal: that Defendant would lose the opportunity for a Rule 35 motion. The note states in its entirety:

> I spoke to Ramon [sic] Spruill on April 20, and then again on April 26, 2012, with the subject being the question of how he wished to proceed. Did he wish to appeal or not? I explained to him that the appeal would fail, as the law on the issue of whether the government was required to file a 5K1.1 motion was up to the government, not the defense. He advised on April 26 that he did not wish to appeal.

The note is, however, consistent with the more relevant point of Mr. Dingus' testimony (that is, that Defendant advised him that he did not wish to appeal on April 26, the last time the two discussed the issue of an appeal). (The court's copy of doc. 49, which contains a copy of the note in question, has been placed in the paper file. The note is not part of the electronic record, however).

Case Nos.: 5:11cr43/RS/EMT; 5:13cv169/RS/EMT

would have done so. Counsel's unequivocal testimony was that Defendant told him not to appeal. When asked why a Rule 35 motion was never filed, counsel concluded that either the credibility issues continued or the assistance Defendant provided was not substantial.

The court permitted re-cross examination, during which Mr. Dingus testified that he did not request a letter from Defendant setting forth in writing his thoughts with respect to an appeal.

### Findings of Fact

After hearing the testimony adduced at the hearing and reviewing the record in this case, the court finds that counsel was not constitutionally ineffective for failing to file an appeal. Defendant was obviously interested in cooperating with the Government and receiving the benefit of a sentence reduction from the very beginning of this case. He was clearly disappointed that the Government had not filed a 5K1.1 motion before or at sentencing. It is also clear that by filing a notice of appeal, Defendant would have lost the opportunity for a future sentence reduction, pursuant to Rule 35, and that any cooperation he had provided to date would have been for naught. The court finds that the most likely scenario based on the timing of events is that, after consultation with his attorney, who in turn had previously consulted with the Government, Defendant instructed counsel not to file an appeal so as not to jeopardize his chance of benefitting from a Rule 35 motion. Once it became apparent that no Rule 35 motion was forthcoming, and only then, did Defendant file the instant motion in which he complains that counsel failed to file an appeal. Counsel did not fail to comply with his client's request, and Defendant is not entitled to relief.

### **Failure to Secure a Rule 35 Motion[10]**

In his motion, Defendant appears to suggest that counsel "assured" him that he would receive a Rule 35 motion. It is unclear whether he alleges that this assurance occurred before or after his plea, or both. To the extent Defendant contends that this promise came before his plea it is refuted by the record. During the plea colloquy, Defendant stated under oath that there were no secret or undisclosed promises that were not included in the plea agreement and supplement, and counsel repeated the assurance that there had been no promises or understandings regarding disposition of Defendant's case that were not part of the record (doc. 133 at 13, 14).

---

[10] The court liberally construes Defendant's motion as including this issue, although it is not identified as a separate claim.

Defendant's allegations make clear that after his sentencing he and his attorney were in contact with the Government with respect to the possibility of his receiving a substantial assistance motion. Defendant claims that counsel told him that he would be receiving a reduction, although counsel's correspondence to him suggests otherwise (doc. 131-1 at 9). Ultimately the Government decided not to file a Rule 35 motion, and Defendant appears to claim that counsel's performance was unconstitutionally deficient in that he failed to ask the Government why no Rule 35 was filed (doc. 131-1 at 4). Defendant's assertion that counsel's failure to make this inquiry rises to the level of ineffective assistance of counsel fails, as he has not shown that the outcome of the proceedings would have been different had counsel so inquired.

To the extent Defendant's claim is directed at the Government's failure to file the Rule 35 motion, it also fails. The decision to file a Rule 35(b) motion is a matter of prosecutorial discretion. *See* United States v. Nealy, 232 F.3d 825, 831 (11th Cir. 2000), *cert. denied,* 122 S. Ct. 552, 151 L. Ed. 2d 428 (2001); United States v. Orozco, 160 F.3d 1309, 1315 (11th Cir. 1998); United States v. Forney, 9 F.3d 1492, 1501 (11th Cir. 1993). The government has a power, not a duty, to file such a motion when a defendant has provided substantial assistance. Wade v. United States, 504 U.S. 181, 185 (1992) (analyzing substantial assistance motions under § 5K1.1 and 18 U.S.C. § 3553(e)); *see also* United States v. McNeese, 547 F.3d 1307, 1309 (11th Cir. 2008) (applying Wade to Rule 35(b) motions). Even plea agreements that require the government to consider whether the aid to the prosecution constitutes substantial assistance, do not create a contractual duty to file a 5K1.1 motion. Forney, 9 F.3d at 1499–1500.

Here, Defendant's plea agreement specifically provided that the United States Attorney had the sole discretion to determine whether Defendant provided substantial assistance in the investigation or prosecution of others and whether a Rule 35 motion would be warranted (doc. 79 at 3). It further provided that should a substantial assistance motion be filed, the relief to be granted, if any, would be solely within the discretion of the district court (*id.*). Judicial review of a decision not to file a substantial assistance motion is appropriate only where there is an allegation and substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion. Wade, 504 U.S. at 185–86; United States v. Dorsey, 554 F.3d 958, 961 (11th Cir. 2009); Nealy, 232 F.3d at 831. A defendant who merely claims

to have provided substantial assistance or who makes only generalized allegations of an improper motive is not entitled to a remedy or even to an evidentiary hearing.  Wade, 504 U.S. at 186.  Defendant has not shown, or even suggested, any impropriety in the Government's decision not to file a substantial assistance motion and he is not entitled to relief.

### Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The amended motion to vacate, set aside, or correct sentence (doc. 131) be **DENIED**.
2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 4th day of March 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

Case Nos.: 5:11cr43/RS/EMT; 5:13cv169/RS/EMT

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).